Case 3:02-at-06000   Document 415   Filed 11/30/2009   Page 1 of 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Michael Medici, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | |
| THE POCONO MOUNTAIN SCHOOL DISTRICT, | : | |
| | : | |
| | : | |
| DWIGHT R. PFENNIG,  Superintendent | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

**I.      INTRODUCTION**

1.   This is a civil action brought to enforce an order of the Pennsylvania Special Education Due Process Appeals Panel ("Panel") requiring the Pocono Mountain School District ("District") to provide Michael Medici with access to certain education records of his son, T.M. The action is also brought to appeal that portion of the Panel's decision holding that the Pocono Mountain School District may deny Mr. Medici access to the records of standardized testing administered to his son T.M. on the ground that those education records are protected from disclosure by the test manufacturers' copyright.  The Panel erred in so holding, since it lacked jurisdiction to decide an issue arising under federal copyright law, 17 U.S.C. 101 *et seq.,* and even if it had such jurisdiction, parental access to their children's completed test booklets does not infringe the test manufacturers' copyright.

1

Case 3:02-at-06000 Document #415 Filed 11/30/2009 Page 2 of 11

2.      The underlying administrative action arose under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* and its implementing regulations, 34 C.F.R. §§ 300.501(a) and 300.613.

3.      This action arose after Michael Medici, requested education records for his son T.M. from the Pocono Mountain School District (hereinafter "the District"). The District failed and refused to produce all of T.M.'s records, and Mr. Medici consequently requested due process hearings to obtain access to the records in the District's possession.

## II.  JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343 and 20 U.S.C. § 1415(i)(2)(A).  Plaintiff has fully exhausted his administrative remedies.

5.      Plaintiff's cause of action arises under 20 U.S.C. § 1415(b)(1)*,* 34 C.F.R. §§ 300.501 and 300.613.

6.      Venue in this district is proper under 28 U.S.C. § 1391(b).

## III.  PARTIES

7.      Plaintiff Michael Medici is the father of T.M., who at the time of the due process hearing below was enrolled in the Pocono Mountain School District as a special education student.

8.      T.M's eligibility for special education and related services is not disputed by any party.

9.      Plaintiff Michael Medici brought the due process hearing below seeking access to the education records of his son, T.M. He has exhausted his administrative remedies.

2

10.    Defendant the Pocono Mountain School District (District) is an educational agency with its offices at Pocono Mountain Road, Box 200, Swiftwater, Pennsylvania 18370. The District is responsible for providing special education services to students with disabilities who reside in the District.

11.    As a Local Educational Agency (LEA) within the meaning of the Individuals with Disabilities Education Act, the Pocono Mountain School District is responsible, in providing for the education of children with disabilities within its jurisdiction, to have in effect policies, procedures, and programs that are consistent with the State policies and procedures established under the Act, 20 U.S.C. § 1412. *See* 20 U.S.C. § 1413(a)(1).  This must include policies and procedures to assure that the parents of students with disabilities have access to their children's education records pursuant to 34 C.F.R. § 300.613.

12.    Defendant Dwight Pfennig is the Superintendent of the District with his office at Pocono Mountain Road, Swiftwater, Pennsylvania 18370.  He is responsible for the administration of all educational programs provided by the District, including the programs for all special education students residing in the District.

## IV.  FACTS

**A Parent's Right to Access the Education Records of his Child**

13.    Under the Individuals with Disabilities Education Act (IDEA), parents are entitled to inspect or review all educational records with respect to "(1) The identification, evaluation, and educational placement of the child; and (2) The provision of FAPE to the child." 20 U.S.C. § 1415(b)(1), 34 C.F.R. § 300.501(a).  Further, IDEA requires that

> (a) Each participating agency must permit parents to inspect and review any education records relating to their children that are collected, maintained, or used by the agency under this part. The agency must comply with a request without unnecessary delay and before

3

any meeting regarding an IEP, or any hearing pursuant to Sec. 300.507
or Sec. Sec.  300.530 through 300.532, or resolution session pursuant
to Sec.  300.510, and in no case more than 45 days after the request
has been made.

34 C.F.R. § 300.613. IDEA also specifies that

(b) The right to inspect and review education records under this
section includes--
(1) The right to a response from the participating agency to
reasonable requests for explanations and interpretations of the
records.

*Id.*

14.      IDEA's definition of  "education records" incorporates the definition set forth

in the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g et seq., 34

C.F.R. § 99 et seq.:

Education records means the type of records covered under the
definition of ``education records'' in 34 CFR part 99 (the regulations
implementing the Family Educational Rights and Privacy Act of 1974, 20
U.S.C. 1232g (FERPA)).

34 C.F.R. § 300.611(b). Thus, although FERPA rights are not enforceable via a private right of

action, those rights are enforceable under IDEA when the records of public school students are

implicated.

15.      FERPA defines "education records as follows:

Education records. (a) The term means those records that are:
(1) Directly related to a student; and
(2) Maintained by an educational agency or institution or by a party
acting for the agency or institution.

34 C.F.R. § 99.3.   Only four exceptions to this definition are listed in the statute: (1) records

kept in the sole possession of the maker; (2) records of a separate law enforcement unit; (3)

employment records of persons employed by an educational institution or agency; and (4)

medical records of students over the age of 18. *Id.*  The records whose production is sought in

these exceptions do not fall within any of the four exceptions to the definition of "education

records" in FERPA and IDEA.

**The Original Administrative Proceeding**

16.     In 2007, T.M.'s father, Michael Medici, requested access to his son's education

records. When the District failed and refused to produce all of T.M.'s records, Mr. Medici

requested a due process hearing to compel the District to produce the records in its possession. A

hearing officer was assigned and a hearing was convened on July 23, 2007.

17.     The Hearing Officer received no evidence but asked the parties to brief the issue,

"What educational records are the District and its subcontractor(s) obligated to make available to

[T.M.'s] Parents?"  She concluded that "based on the guidance offered [in the school district's

policy]," the following documents are *not* education records:

> [P]rotocols from standardized testing; daily or classroom sign-in/sign-out sheets;
> handwritten/typewritten/email correspondence between teachers and
> administrative staff, among administrative staff, and/or between/among
> teachers/administrative staff and parents; personal teacher notes made for the
> purpose of recording/remembering the student=s day to day progress or serving as
> a reminder of a plan for working with the student; raw notes of observations of
> the student; raw notes taken by evaluators; handwritten annotations on draft ERs,
> RRs and/or IEPs; IEP meeting notes made by individual participants to aid
> individual recollection; and/or any other record specifically delineated as not
> being an education record in current or future federal, state, or District regulations
> and/or policies.

H.O. Dec. at 6.

18     Mr. M. filed timely exceptions to the Hearing Officer's decision in the Special

Education Due Process Appeals Review Panel, challenging that part of her decision that excluded

from the definition of education records the following records that he had requested:

(a)     Protocols from standardized testing;

Case 3:02-at-06000 Document 115 Filed 1/30/2009 Page 6 of 11

(b)      Handwritten, typewritten or email correspondence between teachers and administrative staff, among administrative staff, and/or between/among teachers/administrative staff and parents;

( c)      Notes concerning T.M. Medici by district or MCTI staff, *other than* those kept in the sole possession of the maker, used only as a personal memory aid, and not accessible or revealed to any other person except a temporary substitute for the maker of the record;

(d)      Raw notes by observers and evaluators, including handwritten annotations on draft Evaluation Reports, Re-evaluation Reports and/or Individualized Education Programs (IEPs) and IEP meeting notes made by individual participants, *other than* those kept in the sole possession of the maker, used only as a personal memory aid and not accessible to or revealed to any other person except a temporary substitute for the maker of the record;

(e)      Any other record specifically delineated as not being an education record in the school district's own regulations or policies.

19.      On September 28, 2007, the Panel held that the Hearing

Officer had applied an incorrect legal definition of "education record" and entered the

following order:

> [T]he sections of the hearing officer's decision and order that identify categories of documents that will never qualify as "education records" are reversed. The hearing officer is directed to review any questioned or contested document to determine if it meets [the correct] definition of an "education record."

*In re The Educational Assignment of T.M., a student in the Pocono Mountain Sch. Dist*., Spec.

Educ. Op. No. 1844A, at 5 (Pa. State Educational Agency, 2007) (attached hereto as Exhibit A).

**The District's Petition for Review and the Proceeding in District Court**

20.      On October 27, 2007, the District filed a Petition for Review of the Panel's

decision in the Commonwealth Court, arguing that the Panel lacked authority as a matter of law

to remand to the Hearing Officer for further proceedings.  T.M. and Mr. Medici removed the

petition to federal court on November 19, 2007 and filed an Answer and Counterclaim for

attorney fees on the same day.

Case 3:02-at-06000 Document #: 415 Filed 1/30/2009 Page 7 of 11

21.     In the federal action, C.A. No. 07-2122-ARC, the District filed motions to dismiss its own claim and the counterclaim for attorney fees for lack of subject matter jurisdiction (the District also filed a motion for summary judgment on the counterclaim). The parties filed cross-motions for summary judgment on the issue whether the Panel had the power to remand T.M.'s to the administrative process and if not, what the appropriate remedy should be.

22.     On March 29, 2009, the District Court denied the District's motions to dismiss and granted in part both parties' motions for summary judgment.  The Court held that the Panel lacked authority to remand the matter to the Hearing Officer. At the same time, the Court held that it had authority to remand the matter to the Panel "for entry of a final order determining the parties' rights with respect to the disputed documents, in conformity with its September 28, 2007 opinion."  The Court granted summary judgment to the District on the counterclaim for attorney fees, holding that the request for fees and costs was premature.  A copy of the District Court's decision is attached as Exhibit B.

**The Appeals Panel's Decision on Remand**

23.     On remand from the District Court, the Panel issued a final decision on August 31, 2009. A copy of that decision is attached as Exhibit C. The Panel denied Mr. Medici's request for test protocols, that is, the answer booklets and scoring sheets generated when a standardized test is administered. The Panel acknowledged that "there is precedent for ordering a school to produce test protocols in certain circumstances." Exh. C at 12.  However, the Panel reasoned that test protocols are used by the test administrator to "produce[] evaluation reports" and thus may fall within the FERPA/IDEA exception to parental access for "records kept in the sole possession of the maker." The Panel had no evidence before it that the test protocols for T.M. were in fact kept in the sole possession of the test administrator and were never shared with

Case 3:02-at-06000 Document 1115 Filed 1/30/2009 Page 8 of 11

other District personnel. To require a parent to prove that such documents were *not* kept in the

sole possession of the test administrator as a condition of parental access is manifestly unjust,

since the parent who has sought and been denied access to those education records would have

no way to gain access to that information.

24.     The Panel further held that the District is not obligated to provide Mr. Medici

with access to the test protocols and raw test data on the ground that "copying [test protocols]

*can* violate copyright laws." Exh. C at 12 (emphasis added).  This holding is legally erroneous

for the reasons set forth below.

25.     First, no issue of copyright law was before the Panel. The federal courts have

exclusive jurisdiction over questions of copyright law, and consequently the Panel had no

jurisdiction to decide a question arising under Title 17 of the United State Code. Indeed, the

Panel's jurisdiction is limited to questions arising under the Individuals with Disabilities

Education Act and 22 Pa. Code Chapter 14.

26.     Second, the Panel's conclusion is contradicted by all relevant legal authority. The

only federal court to address the issue whether copying test protocols violates the test

manufacturer's copyright held that it does not.  *See Newport-Mesa Unified School District v.*

*State of California Department of Education*, 371 F. Supp. 2d 1170 (C.D. Cal 2005), where the

district court held that providing copies of test protocols to the parents of a special education

student is a "fair use" of copyrighted material, *see* 17 U.S.C. § 107, and consequently, does not

infringe the test manufacturer's copyright. The court reasoned that since the parents' purpose in

copying the protocols is not for a commercial purpose, but rather to broaden the parents'

understanding of the child's educational needs, it does not affect the market for the test

manufacturer's product. Further, an answer booklet completed by a student, or reflecting the

student's answers to the standardized test questions is a "transformative use" of copyrighted material and thus is non-infringing.  The regulatory agency responsible for administering FERPA and IDEA, the United States Department of Education, has also held that raw test data and any notes relevant to the data must be provided to parents who request full copies of their children's records. *See Allegheny (PA) Intermediate Unit*, 20 IDELR 563, 573 (Office for Civil Rights, July 29, 1993).

27.     Finally, even if copying test protocols, answer sheets and other raw testing data did violate copyright law, providing Mr. Medici with *access* to these education records could not possibly constitute such a violation, any more than viewing a film or reading a book would violate the film-maker's or author's copyright.

28.     The Panel held that "[h]andwritten, typewritten or email correspondence between or among teachers, staff and parents that are related to the Student," "[r]aw notes by observers and evaluators if they are shared with others" and "handwritten annotations on draft Evaluation Reports, Re-evaluation reports, IEPs and IEP meeting notes" are education records. The Panel ruled that to the extent that the district has kept such documents and emails, it must provide them to Mr. Medici. Yet since the Panel's decision, the District has failed to provide Mr. Medici with any such documents or emails despite inquiries by Mr. Medici and his counsel.

29.     The Panel erred in accepting the District's list of education records that it claimed it had provided to Mr. Medici. Many of those records were not, in fact, provided to him for review. The District's counsel brought the records with him to the due process hearing in 2007 but took them away without sharing them with Mr. Medici.

## V.     CLAIMS

9

Case 3:02-at-06000 Document 1415 Filed 11/30/2009 Page 10 of 11

30.     Defendants have violated the rights of Plaintiffs as secured by the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(b)(1) and 34 C.F.R. §§ 300.501(a) and 300.613, by:

(a)     Violating the right of Michael Medici to inspect or review all educational records with respect to the identification, evaluation, and educational placement of T.M. and the provision of FAPE to  T.M., as secured by 34 C.F.R. § 300.501(a);

(b)     Failing and refusing to permit Michael Medici to  inspect and review any education records relating to T.M. that are collected, maintained, or used by the District under this part, as secured by 34 C.F.R. § 300.613;

(c)     Failing and refusing to comply with Michael Medici's requests to inspect and review the education records relating to T.M. without unnecessary delay, before any meeting regarding an IEP, or any due process hearing, as secured by 34 C.F.R. § 300.613.

## VI.  RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Receive the record of the administrative proceedings below.

2.     Hear additional evidence at Plaintiff's request.

3.      Order the Pocono Mountain School District to produce the education records of T.M. as ordered by the Appeals Panel in its decision and order of August 31, 2009.

4.     Order the Pocono Mountain School District to produce all records of educational testing of T.M. that it maintains, including test booklets, answer sheets, raw test protocols completed by T.M. or reflecting T.M.'s responses to test questions and other raw data.

5.     Award plaintiffs their reasonable attorney fees and costs.

6.     Issue such other and further relief as the court deems necessary and appropriate.

Respectfully submitted,


/s/ Phillip A. Drumheiser
Pennsylvania Attorney I.D. No. 90003
P.O. Box 890
Carlisle, PA 17013
(717) 245-2688
(717) 258-4408 FAX

Judith A. Gran
Pennsylvania Attorney I.D. No. 40134
2014 Spring Garden St.
Philadelphia, PA 19130
(267) 577-1288

November 29, 2009

11