*This is a redacted version of the original appeals panel decision. Select details may have been removed from the decision to preserve anonymity of the student. The redactions do not affect the substance of the document.*

SPECIAL EDUCATION DUE PROCESS APPEALS REVIEW PANEL
COMMONWEALTH OF PENNSYLVANIA

IN RE THE EDUCATIONAL ASSIGNMENT : 
OF T.M., A STUDENT IN THE : SPECIAL EDUCATION
POCONO MOUNTAIN SCHOOL DISTRICT : OPINION NUMBER 1844 A

BEFORE APPEALS PANEL OFFICERS LYTTLE, CAUTILLI AND GONICK
OPINION BY GONICK

### BACKGROUND

Student is a xx-year-old eligible student who resides and attends school in the Pocono Mountain School District (District). During the 2006/2007 school year, Student was enrolled in classes at a District school for part of the school day, and at a part-time career and technical school[1] established and funded by the District and three other school districts for part of the school day.

In late May, 2007, Student's father[2] requested a due process hearing by filing a complaint against the District. The hearing commenced July 23, 2007. At the outset the parties discussed on the record an agreement that had been reached concerning the parents' access to educational records (NT 7-8). However, as the discussion continued, it became apparent that while Student's mother and the District were in agreement, Student's father and the

---

[1] This career and technical school was formed by written Articles of Agreement first approved and entered into in March, 1969, by four Monroe County school districts. The school provides educational programming to students from six high schools located in those four school districts. The four school districts joined together to form the career and technical school because such programs are costly to establish. The career and technical school receives funds from the four school districts and from the Commonwealth of Pennsylvania. The school is governed by a joint operating committee comprised of school board directors from the four sending school districts.

[2] Student's parents live apart but share legal custody, including educational decision-making rights.

District were not (NT 9-18).  The parties then agreed that the hearing officer needed to decide which records qualified as "education records" (NT 19).  The hearing officer invited the parties to submit briefs, but did not take testimony or receive exhibits.  The hearing officer stated that a written decision would be sent to the parties and counsel (NT 20).

On August 8, 2007, the hearing officer issued a decision that set out what documents were education records and what documents were not education records.  The hearing officer entered an order that identified categories of records that had to be made available to the parents, and categories of records that did not have to be made available to the parents.  The decision was sent to the District and to the parents.  The District and the father agree, however, that father's copy of the decision was sent to an address at which father does not receive mail.  During an individualized education program (IEP) meeting held August 17, 2007, at the District, Student's father learned that a decision had been issued by the hearing officer.  District representatives gave father a copy of the decision at that time.

On August 30, 2007, father filed exceptions to the hearing officer's decision. The exceptions set out five reasons why the decision was erroneous: (1) the hearing officer substituted the District's definition of education records for the definitions contained in federal law; (2) the hearing officer held that raw test data and test protocols were not education records; (3) the hearing officer ruled that correspondence among District staff was not included in the Family Educational Rights and Privacy Act (FERPA)[3] and IDEA 2004 definition of education records; (4) the hearing officer determined that notes and annotations on existing documents that were shared with other staff were not education records; and (5) the hearing officer did not order access to the raw data underlying District reports.

The District filed a motion to dismiss asserting the exceptions were not timely filed.  The District also filed an answer to the father's exceptions contending the hearing officer's decision should be affirmed in all respects.  Father filed a response to the motion to dismiss that asserted the exceptions were timely because they were filed within 15 days of the date father

---

[3]   20 USC §1232g et seq.

received the decision.

For the reasons that follow, the Panel reverses the decision and order of the hearing officer.

## DISCUSSION

<u>Motion to Dismiss</u>

The District argues that the time for filing exceptions ran from August 10, 2007, the date Student's mother most likely received a copy of the hearing officer's written decision. The District maintains that the parents' exceptions were due by the close of business on August 27, 2007 (August 25, 2007, fell on a weekend). The Panel denies the District's motion to dismiss.

The Panel concludes that the father's period for appealing the hearing officer's written decision did not begin to run until he actually received a copy of that decision, on August 17, 2007. Both parents were involved in the due process proceeding (NT 11-12, 18-19), and both were entitled to the due process protections afforded by IDEA. *B.P.*, Special Education Opinion No. 1444 (2004); *A.S.*, Special Education Opinion No. 560 (1992). The District argues that notice to one parent constitutes notice to both. The Panel disagrees. The Panel concludes that in circumstances such as those present here, where the parents live apart, share educational decision-making rights, and have differing positions in the due process proceeding,[4] service of a hearing officer's decision on just one of the parents clearly deprives the other parent of due process appeal rights.

Accordingly, the Panel denies the District's motion to dismiss the father's appeal.

<u>Education Records</u>

Father has challenged the portion of the hearing officer's

---

[4] The mother accepts the District's position as to which of Student's records qualify as "education records"; the father disagrees with the District's position (NT 18-19).

3

decision that excludes from the definition of education records: (1) protocols from standardized testing; (2) handwritten, typewritten or email correspondence between teachers and administrative staff, among administrative staff, and/or between/among teachers/administrative staff and parents; (3) notes concerning Student by District staff other than those kept in the sole possession of the maker, used only as a personal memory aid and not accessible or revealed to any other person except a temporary substitute for the record maker; (4) raw notes by observers and evaluators, including handwritten annotations on draft Evaluation Reports, Re-evaluation Reports and/or IEPs and IEP meeting notes made by individual participants other than those kept in the sole possession of the maker, used only as a personal memory aid and not accessible to or revealed to any other person except a temporary substitute for the record maker; and (5) any other record specifically delineated as not being an education record in the District's policies or regulations (Parent's Exceptions, pp. 5-6).

IDEA 2004 provides parents with the right to inspect the education records of their children that relate to the identification, evaluation, educational placement or provision of a free appropriate public education (FAPE) to their children.  34 CFR §§300.501(a) and 300.613.  IDEA 2004 defines "education records" by reference to the definition of "education records" set out in FERPA.  The FERPA regulations define education records as those records that are directly related to a student and maintained by an educational agency or institution or by a party acting for the agency or institution.  34 CFR §99.3(a).  The FERPA regulations specifically exclude from the definition of education records those records "that are kept in the sole possession of the maker, are used only as a personal memory aid, and are not accessible or revealed to any other person except a temporary substitute for the maker of the record." 34 CFR §99.3(b)(1).  The definition of education records under FERPA is broad and parents have the right to inspect all records directly related to a child and maintained by a school district that are not subject to the exclusions of 20 USC §1232g(a)(4)(B).  *Belanger v. Nashua School District*, 856 F. Supp. 40 (D.N.H. 1994).

In this case, it is quite possible that items falling within the broad categories of documents summarily excluded as "education records" by the hearing officer (e.g., handwritten or typewritten or email correspondence between teachers and administrative staff, an/or between/among teachers/administrative staff and parents; handwritten annotations on draft Evaluation Reports, Re-evaluation

4

Reports and/or IEPs): (1) directly relate to Student, (2) are maintained by the District, and (3) are not within the group of documents excluded as education records by 34 CFR §99.3(b)(1). For example, a teacher's handwritten notations on a draft IEP for Student that is subsequently shared with another District teacher or administrator clearly would qualify as "education records" if related to identification, evaluation, educational placement or provision of FAPE. Likewise, handwritten, typewritten or email correspondence directly related to Student, between District personnel (e.g., between teachers, or between teachers and administrators, or between administrators), concerning Student's identification evaluation, educational placement or FAPE clearly would not be records excluded by 34 CFR §99.3(b)(1) as records kept in the sole possession of the maker, used only as a memory aid and not accessible or revealed to anyone other than a temporary substitute for the record maker.

In order to determine if a questioned or contested document does or does not qualify as an education record, the hearing officer must review and test that record with reference to the definitional standards set out in FERPA and IDEA 2004. To the extent the hearing officer has determined without such review that records at issue are not "education records", her determination is reversed.

## ORDER

Accordingly, September 28, 2007, for the reasons set forth in this opinion, the sections of the hearing officer's decision and order that identify categories of documents that will never qualify as "education records" are reversed. The hearing officer is directed to review any questioned or contested document to determine if it meets the FERPA/IDEA 2004 definition of an "education record".

Those exceptions not specifically addressed in this opinion and order are dismissed.

Pursuant to 22 Pa. Code §14.162(o), the parties are advised that this matter may be appealed to the Commonwealth Court of Pennsylvania or to the appropriate federal district court.

Jeffrey Gonick,
For the Appeals Panel

Signature/Mailing Date: September 28, 2007