# SPECIAL EDUCATION DUE PROCESS APPEALS REVIEW PANEL
# COMMONWEALTH OF PENNSYLVANIA

IN RE THE EDUCATIONAL ASSIGNMENT : SPECIAL EDUCATION

OF T.M., A STUDENT IN THE : OPINION NO. 1926B

POCONO MOUNTAIN SCHOOL DISTRICT

BEFORE APPEALS PANEL OFFICERS CAUTILLI, MCAFEE, AND SKIDMORE, OPINION BY MCAFEE, APPELLATE OFFICER

## BACKGROUND

The Student, who is the subject of this appeal on remand from the U.S. District Court for the Middle District of Pennsylvania, was 16 at the time of the initial hearing and 17 years old at the time of the initial appeal (July 23, 2007 and September 28, 2007 respectively). At the time of the initial appeal, the student attended the Pocono Mountain School District (hereinafter the District). Eligibility under the Individuals with Disabilities Education Act (IDEA), 20 USC §§1400 et seq. was not in dispute. Parents[1], at the time of the initial due process hearing and the initial appeal, were seeking access to and copies of the student's educational record under the IDEA federal regulations 34 C.F.R §§ 300.611 and 613 and, by implication, the Family Educational Rights and Privacy Act (FERPA) and its implementing regulations. (N.T.7-8).

On July 23, 2007, the Hearing Officer (hereinafter H.O.) convened a hearing to place on record a settlement agreement ostensibly reached between the District and the Parents. As the hearing proceeded, the

---

[1] At times we refer to Parent and at other times we refer to Parents because one Parent chose to remove him/herself from the dispute during the process.

Parents indicated that they believed that every document (written and electronic) in the possession of the District and its contractors containing Student's name, Parents' name, Student's ID number, or Parents' social security number is a part of Student's educational record. (N.T. 18) As a result of Parent's statement, the H.O. had a "lengthy" discussion off record (N.T. 19) and concluded the parties did not have an agreement (N.T. 19). The H.O. directed the parties to submit a list of what had been provided to Parents. The H.O. further directed Parents to provide a list of what had been received and what was still outstanding. Furthermore, the H.O. invited both parties to submit briefs and the H.O. would render a decision of what documents needed to be turned over to the parents (N.T. 19-20). The H.O. did not report receipt of any briefs in her decision[2].

On August 8, 2007, the H.O. rendered a decision. The H.O. reviewed the pertinent law and decided that educational record would be defined as stated in FERPA as "directly related to a student" and "maintained" by "an educational agency or institution or by a party acting for the agency or institution." The H.O. further stated based on FERPA the term does not include as educational records:

> (1) Records that are kept in sole possession of the maker…
> (2) Records of a law enforcement unit of an educational agency or institution…
> (5) Records that only contain information about an individual after he or she is no longer a student at the agency or institution. 34 C.F.R. 99.3

(H.O. Decision, pp.3-4)

---

[2] No briefs were included with the record received by this panel from the Office for Dispute Resolution (ODR); however in its response to our interim order of July 24, 2009, the District provided a copy of the brief it had filed in 2007. Parent did not provide a copy of any brief filed in 2007.

Accordingly the H.O. ordered the District and its subcontractors to produce:

> Grades; report cards; rank in class and academic honors earned; extracurricular activities and achievements; summary attendance records; official transcripts; summary scores from standardized testing either individually or group administered; Evaluation and Re-evaluation Reports; reports of psychological evaluations, psychiatric evaluations, and evaluations by supportive service professionals (e.g., speech-language evaluation reports, mobility evaluation reports, vocational evaluation reports); Individualized Education Plans (IEPs); Notices of Recommended Educational Placement (NOREP); discipline records including disciplinary notices and notices of detention/ suspensions; medical records and nursing records; counseling records; and records of specialists providing supportive services, and, *(sic)* records transferred from sending schools; ... teacher-made tests/quizzes and tests/quizzes made by textbook publishers; as well as copies of assignments read/corrected by the teacher and returned to the student (e.g., essays, research projects), ... . (H.O. Decision. p. 8)

The H.O. goes on to state the following items are exempted and do not need to be turned over to the Parents:

> Protocols from standardized testing, daily or classroom sign- in/ sign- out sheets; handwritten/typewritten/ e-mail correspondence between teachers and administrative staff, among administrative staff, and/or between/among teachers/administrative staff and parents; personal teacher notes made for the purpose of recording/remembering the student's day to day progress or serving as a reminder of a plan for working with the student; raw notes of observations of the student; raw notes taken by evaluators; handwritten annotations on draft ERs, RRs, and/or IEPs; and, *(sic)* IEP meeting notes made by individual participants to aid individual recollection. (H.O. Decision, p. 8)

The initial panel received an appeal and issued an order on September 28, 2007. The panel reversed part of the H.O. decision because of concern that "broad categories" of items defined by the H.O. might exclude items that were

educational records (Spec Ed Appeal 1844 A, p. 4). The panel ordered the H.O. to review each document in question to determine if it was part of the educational record.

The District appealed the order of the Appeals Panel to state court arguing that the order constituted a remand, asserting that the Panel did not have the authority as a matter of law to remand to the H.O. for further proceedings. Parent then removed the petition to the District Court on November 19, 2007. The District Court determined that the original order of the Appeals Panel did constitute an improper remand and remanded the case to this Panel for "a final determination of the parties' respective rights, as required by federal regulation." Pocono Mountain Sch. Dist. v. T.M., No 3:07-cv-2122 (M.D. Pa. 2009). Slip op. at 21-22.

In an Interim Order issued July 24, 2009 this panel stated:

> The District Court stated, "far from determining the particular records to which [Student]'s father has a right of access, the Panel stated that 'it is quite possible that items falling within the broad categories of documents summarily excluded as education records by the hearing officer' fall within the definition of education records identified by the panel." Id at 18. The previous Appeals Panel had ordered the hearing officer to make those determinations on individual documents thus remanding the case for review of individual documents. The Court has now ordered this Panel to make those determinations, in essence assigning the determinations to the Panel rather than the hearing officer. Thus, it is this Panel's responsibility to examine each of the disputed documents, not in the abstract (i.e., by broad category) but by the specific content and nature of each document. However, in order to fulfill our responsibility we must have access to the "list of what had been provided to Parents and the list of what had been received and what was still outstanding," which the hearing officer ordered the parties to produce and which list is not part of the

record we received and which list is not mentioned in the Hearing Officer's order of August 8, 2007.[3]

The Pennsylvania Regulations in effect at the time of the hearing and appeal at 22 PA 14.162 state:

(r) If the decision of the hearing officer is appealed, the panel of appellate hearing officers as provided in subsection (o) shall conduct an impartial review of the hearing. The review shall do the following:

(1) Examine the entire hearing record.

(2) Ensure that the procedures at the hearing were consistent with the requirements of due process.

(3) Seek additional evidence if necessary. If a hearing is held to receive additional evidence, the rights under subsections (e)--(n) apply.

(4) Afford the parties an opportunity for oral or written argument, or both, at the discretion of the panel of appellate hearing officers. 22 PA Code 14.162

---

[3] According to Parent's Exceptions, the Parent did submit a brief to the hearing officer with a list of the documents Parent believed to be outstanding. Our inquiries to the Office for Dispute Resolution resulted in no briefs, or lists. Without such lists, we are unable to perform the task that the court ordered us to do.

Therefore, given the time that has elapsed since the original hearing and the apparently incomplete record available to this panel (or never provided to the hearing officer in response to her request), we invoke our authority to seek additional evidence and provide the parties opportunity for additional written argument through briefs. Although it is unusual for appeals panels to take this action, reluctance to do so has been predominantly a function of economy (for example, see the discussion of judicial economy in the District Court's decision in this case at pages 12-16). Given the prolonged nature of this case and the need for a final order from this Panel, judicial economy is no longer a critical issue as the issues are already more than two years old and likely have little bearing on the Student's current status.

On or about August 4, 2009, this Panel received a copy of Parent's "List of Educational Records Not Yet Produced by the Pocono Mountain School District." The Panel received no response from the District until August 20, 2009 when we received a copy of the District's response that had been sent to ODR on or about August 6, 2009. The letter accompanying the response indicated that the response was sent "directly to [appellate officer] Dr. McAfee"; however, the address on the accompanying letter clearly indicates that it was sent to ODR's address. Although it is unclear what happened to the original letter transmitted on August 6 (if it was received at ODR, it was not forwarded to Dr. McAfee), it is clear that the Parents received a copy and the District did respond in a timely manner. Thus we will consider the District's response in our decision.

Parent's response included the following list of requested records[4]:

---

[4] Parent's response did not include the brief that was purportedly provided to the Hearing Officer; however, the original list of the Parent is memorialized in the Parent's original exceptions and their Notice of Removal filed in the Middle District of Pennsylvania and dated November 19, 2007 @pp 3-4.

1. All correspondence including email correspondence, among PMSD staff, between PMSD and MCTI, and between PMSD and other third parties regarding [Student's]'s education or discipline issues.

2. The records that [name omitted], counsel for PMSD at the time of the due process hearing below, received in June 2007 from [Special Education Director] at MCTI. The records were voluminous and according to [Special Education Director] contained email correspondence between PMSD and MCTI about [Student] and data concerning [Student]'s behavior. [The Parent] requested a copy of the records but neither [Counsel for the District] nor [Special Education Director] allowed [Parent] to see them.

3. Email correspondence and letters between MCTI director [name omitted] and [name omitted], MCTI Special Ed. Director, regarding their written request to staff to put together a report of, or a statement about, a 5/17/07 incident regarding [Student] in the hallway of MCTI. That information gathered by MCTI was then sent to [name omitted], MCTI attorney and [the District's Attorney].

4. A letter sent from [MCTI Attorney] to [Parent] and PMSD-MCTI superintendent [name omitted], stating that [Parent] no longer was allowed to go to MCTI and pick [Student] up, despite the fact that this was required by [Student]'s IEP because no transportation was available to take [Student] from MCTI to PMSD when [Student] left MCTI during the morning.

5. Letters and copies of records sent in October 2008 by PMSD to Craig's School in New Jersey, a private school that [Parent] located and PMSD considered paying for [Student].

6. Emails and letters between MCTI, PMSD and the Pennsylvania Auditor General addressing whether [Parent] was provided all of [Student]'s educational records.

7. A letter from [Director] of MCTI to the Pennsylvania Auditor General concerning a complaint filed by [Parent] with the Auditor General concerning PMSD's claim that it provided [Parent] with all of [Student]'s education records.

8. Email correspondence requested and not received by [Parent] that were the subject of a FERPA hearing in May, 2009 and a request to review [Student]'s records in June, 2009. [Parent] saw a stack of copies of these mails but did not review them.

9. Copies of tests administered to [Student]. The Specially Designed Instruction in [Student's IEP states that the parents would receive daily written communication about his performance and a copy of all his tests and quizzes. The parents have received only two or three of such tests, yet they estimate that [Student] was administered about 27 tests during the 2006-2007 school year. This suggests that many more tests exist.

10. All progress data concerning [Student]. [Special Education Director] of MCTI has indicated that she communicated about [Student]'s

progress and behavior to [name omitted] of PMSD, but the parents have received very few, if any, of those communications.

The District's response asserts that Parent's response was not responsive to our Order of July 24, 2009. Specifically, the District states:

> [Counsel for Parent's] list is not responsive to your Order of July 24, 2009. The District, therefore, objects to the Parents' submission to the Appeals Panel and requests that you direct the Parents to provide the document requested in your Order as it is clearly not the list of documents that was provided to the Hearing Officer in response to her August 8, 2007, Order. By way of clarification, Paragraph 5 through 8 of [Counsel for Parent's] document reference documents that were generated in 2008 and 2009. These documents clearly did not exist at the times of the Hearing Officer's 2007 Order. In addition, the document was created on July 30, 2009, and therefore cannot be the document submitted to the Hearing Officer in 2007.

The District further provided a list of documents provided to the Parent from August 2005 thru the present.

In addition, the District provided a copy of its brief submitted to the Hearing Officer in July 2007.

Now that we appear to have a more or less complete record we are able to proceed and enter a final decision and order[5]. Two issues emerge from all of these documents. First, which specific documents are appropriate for consideration at this time? Second, which documents meet the definition of educational record under the statute?

---

[5] This Panel's task would have been much simpler had Parent been directly responsive to our request to identify the list of documents it provided to the hearing officer in July 2007 rather than a new list, which includes items that did not exist at the time of the hearing. Although we considered the District's request that we again order the Parent to produce the list, we have decided that the Parent had sufficient time and a clear order to do so and chose a different path. Therefore we will proceed with the information we have.

## DISCUSSION

**Records appropriate for dispute:** It is clear to this Panel that the court's remand is limited to the records identified in the Parent's appeal at the time of the appeal on August 30, 2007[6]. Specifically, the Court remanded to this Panel for "the entry of a final order determining the parties' rights with respect to the disputed documents in conformity with its September 27, 2008 opinion. " Pocono Mountain Sch. Dist. v. T.M., slip op. at 20. Further, our consideration is necessarily limited to those records identified during the original July 23, 2007 hearing and which were the subject of the original appeal to this panel and to the federal district court. See *U.S. v Dixon,* 83 Fed. Appx. 423 (3rd Cir. 2003) explaining that the lower tribunal is required to comply with the mandate of the remand; *In re Establishment of Independent Sch. Dist. Consisting of the Borough of Wheatland,* 912 A.2d 903 (Pa. Commw. 2006) stating that where the case is remanded for specific purpose, the lower tribunal may not decide other issues on remand. Thus, this Panel will limit our consideration to the records specifically delineated in the only documents we have that memorialize the original request: Parent's Exceptions and Parent's Notice of Removal dated November 19, 2007. These records are:

a) Protocols from standardized testing;

b) Handwritten, typewritten or email correspondence between teachers and administrative staff, among administrative staff, and/or between/among teachers/administrative staff and parents;

---

[6] We agree with counsel for the District that Parent's response includes a number of items not requested at the time of the hearing.

c) Notes concerning [Parent] by district or MCTI staff, other than those kept in the sole possession of the maker, used only as a personal memory aid, and not accessible or revealed to any other person except a temporary substitute for the maker of the record;

d) Raw notes by observers and evaluators, including handwritten annotations on draft Evaluations Reports, Re-evaluation Reports and/or Individualized Education Programs (IEPs) and IEP meeting notes made by individual participants, other than those kept in the sole possession of the maker, used only as a personal memory aid and not accessible to or revealed to any other person except a temporary substitute for the maker of the record;

e) Any other record specifically delineated as not being an education record in the school district's own regulations or policies.

**Determination of educational records:** IDEA clearly provides Parents with the right to inspect educational records of their children that relate to identification, evaluation, educational placement and provision of a free appropriate public education (FAPE) to their children. 34 CFR §§300.501(a) and 300.613. IDEA defines "education records" as the definition is set out in FERPA: "those records that are (1) directly related to a student; and (2) maintained by an educational agency or institution or by a party acting for the agency or institution." 34 CFR§99.3. Furthermore, FERPA excludes documents kept in the sole possession of the maker which are used only as a personal memory aid and are not accessible to or revealed to any other person except as a temporary

substitute for the maker of the record. Thus we must subject each of Parent's five requests to the above criteria.

    a. Test protocols- Test protocols are the actual test form and the scoring sheet attached to the form for standardized tests. In most cases, such documents are maintained by the test administrator, usually the school psychologist. From the protocols, the administrator produces evaluation reports, which summarize and interpret the tests results. In most cases, there is no need for the school psychologist to share the test protocols with others. Thus, the protocols serve as a memory aid while the test administrator produces an evaluation report. Furthermore, distributing copies of test protocols to parents would eventually result in invalidation of the tests because test items and answers would be revealed to the general public. This panel is aware of the fact that there is precedent for ordering a school to produce test protocols in certain circumstances. See e.g., *In re Educational Assignment of D.O.*, Special Ed. Op. 1457 (2004). We are also cognizant of the fact that copying such documents can violate copyright laws. Neither the District nor this panel is in a position to override copyright laws, or to interfere with the continuing validity of a standardized test that may have taken years to develop. It is also significant that the Parent's broad request is not limited to tests which are "individually identifiable and directly related to their child's educational program." *Cf. id.* at 3. Furthermore, in the absence of evidence that such documents were shared in any form other than the analysis of the raw

scores provided in the evaluation report, we must conclude that the District is not obligated to provide a copy of the test protocols to the parent in this case. This Exception is denied.

b. We have chosen to merge items b, c and d as they all address written documents that may or may not have been shared between or among educators involved with the Student prior to the July 23 2007 hearing. Thus they are subject to the same analysis.

FERPA is clear in identifying what is and what isn't an educational record. First, the document must be directly related to the student. Handwritten, typewritten or email correspondence between or among teachers, staff and parents that are related to the Student, by definition meet this part of the definition. So would notes about the Parent that are shared among teachers and staff. Raw notes by observers and evaluators if they are shared with others also qualify unless they were used as a temporary substitute for the maker of the record. The latter part of this definition would appear to exclude raw notes, including handwritten annotations on draft Evaluation Reports, Re-evaluation reports, IEPs and IEP meeting notes because those notes would be rejected or incorporated into the final draft of the documents and thus serve as a temporary substitute for the maker of the record (evaluation reports, IEPs, etc.). However, the definition also clearly states that in order for a document to meet the definition as an educational record, it must be "maintained by an educational agency or institution or by a party acting for the agency or

institution." Maintain means "to keep in an existing state" or "to preserve from failure or decline.[7]" We are unaware of and neither party cites to a requirement that the District preserve any handwritten notes, e-mails or even any correspondence. Likewise, we can find no maintenance requirement for annotations on IEPs, evaluation reports or other documents. It is likely that many of these documents, like oral conversation, are transitory and, to the extent that they did exist, they may no longer be maintained by any agency.

Therefore, to the extent that the District has maintained e-mails or written correspondence between/among teachers or staff about the student or Student's Parent, they must be provided to the Parent. All other documents identified in this section do not meet the definition of educational record and to the extent that the District has such documents, they are not obligated to provide them to the Parent.

c. The final item leaves us confused as to its meaning. Parent appears to be asking for any document that the District's policy states is not a record. Parents provide no examples, nor can we conjure such examples that aren't already covered in items a-d. Parent has had ample opportunity to clarify this request and failed to do so. Thus this Exception is denied.

---

[7] Webster's New Collegiate Dictionary

## ORDER

AND NOW, this 30th day of August 2009, the District is ordered to provide a copy of all correspondence (e-mail, handwritten, typed) maintained by the District and shared between/among teachers and staff pertaining to the Student or the Parent. The District is not required to provide copies of test protocols or annotations on IEPs, IEP meeting notes, Evaluation Reports, or Re-evaluation Reports. Any exceptions not specifically addressed by this opinion are dismissed.

In accordance with 22 PA Code § 14.162 (o) the parties are advised that this Order may be appealed to the Commonwealth Court of Pennsylvania or the appropriate federal district court.

*James K. McAfee*
James K. McAfee, Ph.D.
for the Appeals Review Panel

Mailing Date: August 31, 2009